<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **AURELIO CAGNO**,<br><br>      Plaintiff,<br><br>    v.<br><br>**DONIQUE IVERY, et al.**,<br><br>      Defendants. | Civil Action No. 19-20384 (ZNQ) (TJB)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

   Plaintiff Aurelio Cagno, an inmate at New Jersey State Prison ("NJSP") in Trenton, New Jersey, is proceeding with a civil rights complaint pursuant to 42 U.S.C. § 1983 and state law. (Am. Compl., ECF No. 59.) Before the Court are Defendants Gary Lanigan, Steven Johnson, and Hesham Soliman's (the "New Jersey Department of Corrections Defendants" or "NJDOC Defendants") and Arthur Brewer, M.D., and Frank Ghinassi, Ph.D.'s (the "University Correctional Health Care Administrative Defendants" or "UCHC Administrative Defendants") (collectively, the "Moving Defendants") motions to dismiss. (NJDOC Defs.' Mot., ECF No. 75; UCHC Administrative Defs.' Mot., ECF No. 76.) For the reasons below, the Court will deny the motions in part as premature and without prejudice to the extent that they assert that the statute of limitations bars Plaintiff's claims. However, the Court will grant the motions in part to the extent that they assert that the Amended Complaint fails to state a claim against them, except as to Count Eight. The Court will also exercise its screening authority under the Prisoner Litigation Reform

Act ("PLRA"),[1] and will dismiss Counts Five, Seven, and Nine against all defendants, including Defendants Donique Ivery, A.N.P., R.N., and Keisha Scott, R.N. (the "Nurse Defendants"). Finally, the Court will deny the Moving Defendants' pending letter requests for a stay of discovery pending a decision on the motions to dismiss, (UCHC Administrative Defs.' Letter Request, ECF No. 88; NJDOC Defs.' Letter Request, ECF No. 89), as moot.

I.   **BACKGROUND AND PROCEDURAL HISTORY**[2]

This case arises from a foot condition that Plaintiff endured while incarcerated at NJSP. On or around November 13, 2017, Plaintiff submitted a sick call slip for pain in his right foot. (Am. Compl. ¶ 13.) Defendant Ivery saw Plaintiff at NJSP's clinic on or around November 15, 2017. (*Id.* ¶ 14.) Plaintiff explained to Defendant Ivery that he was experiencing severe pain on his right foot, that his right foot was cold, and that he was losing feeling in his toes. (*Id.* ¶ 15.) Defendant Ivery directed Plaintiff to take off his right sock and shoe. (*Id.* ¶ 16.) She "glimpsed" at Plaintiff's foot from approximately eight feet and ordered him to put back on his sock and shoe. (*Id.*) Unsatisfied with this, Plaintiff asked her to reexamine his foot, but Defendant Ivery refused. (*Id.*) Instead, she became mad at Plaintiff and sent him away without any treatment. (*Id.* ¶¶ 16–17.)

On or around November 16, 2017, Plaintiff noticed that the bottom of his toes was changing color and his pain was increasing. (*Id.* ¶ 19.) A correctional office gave Plaintiff a medical pass and sent him to the clinic. (*Id.*) Upon his arrival at the clinic, Plaintiff told Defendant Ivery that

---

[1] *See Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 589 (W.D. Pa. 2008) ("[I]f there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA.").

[2] For the purpose of this Motion, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

his pain had increased and that the bottom of his toes was turning gray. (*Id.* ¶ 20.) Defendant Ivery, however, refused to attend to Plaintiff, telling him: "I already saw you yesterday. I'm not going to see you again. Go see someone else." (*Id.*)

Thereafter, Plaintiff went to see Defendant Scott. (*Id.* ¶ 21.) Plaintiff explained to Defendant Scott what he had experienced with his foot, but Defendant Scott told him that Defendant Ivery had already examined him. (*Id.* ¶ 22.) Defendant Scott sent Plaintiff away without any treatment. (*Id.*)

The next day, Plaintiff informed correctional officers that his condition was worsening. (*Id.* ¶ 23.) One of the officers gave him an emergency medical pass and sent him to the clinic. (*Id.*) Once there, Plaintiff informed the Nurse Defendants about his condition, but both refused to treat him. (*Id.*) Once again, Plaintiff left without any treatment. (*Id.*)

A day or two later, an officer gave Plaintiff another emergency pass and sent him to the clinic. (*Id.* ¶ 24.) This time Nurse Inaish Jackson saw Plaintiff. (*Id.*) Plaintiff explained his situation to Nurse Jackson. (*Id.*) Nurse Jackson examined Plaintiff's right foot and informed him that he needed to go to the hospital right away. (*Id.*) Nurse Jackson told the Nurse Defendants about Plaintiff's condition and summoned an ambulance to take Plaintiff to Saint Francis Medical Center. (*Id.* ¶ 25.) According to Plaintiff, the Nurse Defendants appeared scared. (*Id.*) Defendant Ivery started using her computer and called Defendant Scott to join her, and they began to tamper with Plaintiff's medical record. (*Id.*)

At the hospital, medical providers diagnosed Plaintiff with ischemia of the foot due to a thrombosed popliteal aneurysm. (*Id.* ¶ 27.) The medical providers told Plaintiff that he might lose his toes because of the delay in his arrival at the hospital. (*Id.*) The medical providers operated on Plaintiff, and Plaintiff stayed at the hospital from November 20 to December 3, 2017. (*Id.*)

Although Plaintiff returned to the prison infirmary on December 3, 2017, officials sent him back to the hospital on December 4, 2017. (*Id.* ¶ 28.) On December 20, 2017, medical providers at the hospital amputated half of Plaintiff's right foot. (*Id.*)

Plaintiff returned to the prison infirmary on December 29, 2017 and spent a few months there. (*Id.* ¶¶ 28–29.) During this time, Plaintiff was unable to control his bodily functions. (*Id.* ¶ 29.) Instead, Plaintiff used pampers and had a foley catheter inserted. (*Id.*) The foley catheter came with instructions from the specialist to be changed every three to four weeks, but neither the Nurse Defendants nor their colleagues ever changed it. (*Id.*) As a result, Plaintiff developed a urinary infection and pain. (*Id.*)

Plaintiff also developed a severe rash and wound due to the alleged inadequate treatment provided by the Nurse Defendants. (*Id.* ¶ 30.) This caused Plaintiff to experience pain, a burning sensation, and humiliation. (*Id.*) According to Plaintiff, the Nurse Defendants were aware that Plaintiff had a severe rash and wound, but they intentionally failed to provide adequate incontinence treatment. (*Id.*)

On January 4, 2017, Defendant Scott refused to clean Plaintiff and change his diaper. (*Id.* ¶ 31.) This caused him severe pain and humiliation. (*Id.*)

On November 15, 2019, two years after Defendant Ivery first saw Plaintiff for his foot injury, Plaintiff initiated this action by filing a complaint with the Court *pro se*. (*See* Compl, ECF No. 1.) The original complaint asserted claims against the Nurse Defendants only, including claims for malpractice and inadequate medical care. (*See id.*) The Court screened the complaint and permitted the claims to proceed. (*See* June 8, 2020 Order, ECF No. 3.)

On May 24, 2022, Plaintiff, this time represented by counsel, filed an Amended Complaint. (*See* Am. Compl.) The Amended Complaint, for the first time, raises claims against the Moving

Defendants, who Plaintiff alleges were, as leadership of the Department of Corrections and the UCHC, responsible for the training, supervision, and implementation of policies and procedures that contributed to Plaintiff's injuries.  (*See id.* ¶¶ 40–44.)  Specifically, the Amended Complaint sets forth the following seven claims against the Moving Defendants: supervisor liability pursuant to Section 1983 (Count Three), state constitutional violations pursuant to the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. §§ 10:6-1 to -2 (Count Four), intentional infliction of emotional distress ("IIED") (Count Five), civil conspiracy (Count Six), abuse of process (Count Seven), violations of New Jersey's Nursing Home Responsibility and Rights of Residents Act ("NHRRRA"), N.J. Stat. §§ 30:13-1 to 30:13-19 (Count Eight), and punitive damages (Count Nine).  (*See* Am. Compl.)

On September 7, 2022, the Moving Defendants submitted the instant motions to dismiss the Amended Complaint, asserting that the relevant statute of limitations bars Plaintiff's claims and that the Amended Complaint fails to state a claim for relief.  (*See* NJDOC Defs.' Mot.; UCHC Administrative Defs.' Mot.)  Plaintiff opposed the motions on October 3, 2022.  (Pl.'s Opp'n to NJDOC Defs.' Mot., ECF No. 79; Pl.'s Opp'n to UCHC Administrative Defs.' Mot., ECF No. 80). On October 25, 2022, the Moving Defendants replied.  (UCHC Administrative Defs.' Reply, ECF No. 86; NJDOC Defs.' Reply, ECF No. 87.)  Accordingly, the matter is fully briefed and ripe for determination.

## II.     LEGAL STANDARD

In deciding a motion to dismiss, a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]."  *Phillips*, 515 F.3d at 228.  "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

5

(2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 560 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

6

### III.     DISCUSSION

In their motions to dismiss, the Moving Defendants contend that the statute of limitations bars all of Plaintiff's claims against them and that, in any event, the Amended Complaint fails to state a claim against them. The Court addresses each argument in turn.[3]

### A.     Whether the Statute of Limitations Bars Plaintiff's Claims

The Moving Defendants first contend that the relevant statute of limitations bars Plaintiff's claims against them. (*See* NJDOC Defs.' Br. in Supp. 6–12, ECF No. 75-3; UCHC Administrative Defs.' Br. in Supp. 2–5, 9–10, 13, ECF No. 76-2.) Specifically, they contend that Plaintiff's claims are governed by a two-year statute of limitations, that Plaintiff's claims accrued more than two-years before Plaintiff's filing of the Amended Complaint, which first asserted claims against them, and that the relation-back doctrine does not apply to save Plaintiff's claims. (*See* NJDOC Defs.' Br. in Supp. 6–12, ECF No. 75-3; UCHC Administrative Defs.' Br. in Supp. 2–5, 9–10, 13, ECF No. 76-2.)

In response, Plaintiff concedes that a two-year statute of limitations applies but contends that the so-called discovery rule tolls the statute of limitations because Plaintiff allegedly did not discover that the Moving Defendants were responsible for his injuries until a later time. (*See* Pl.'s Opp'n to NJDOC Defs.' Mot. 7–9; Pl.'s Opp'n to UCHC Administrative Defs.' Mot. 7–9.) Plaintiff also contends that the claims in the Amended Complaint relate back to the original pleading and, therefore, are timely. (*See* Pl.'s Opp'n to NJDOC Defs.' Mot. 9–13; Pl.'s Opp'n to UCHC Administrative Defs.' Mot. 9–13.)

As explained below, the Court declines to decide the merits of Defendants' statute of

---

[3] Where appropriate, the Court addresses the Moving Defendants' motions together. To the extent that one group of defendants raises an argument that the other omits, the Court employs its screening authority under the PLRA. *See Banks*, 568 F. Supp. 2d at 589.

7

limitations defense at this time. "[W]hile a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking [one of the exceptions to the statute of limitations bar] in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014). "This distinction comes to the fore where the applicability of the [exception invoked] is not evident on the face of the complaint but the plaintiff also does not plead facts that unequivocally show that the [exception] does not apply." *Id.*

Here, the applicability of the discovery rule and the relation-back doctrine is not evident from the face of the Amended Complaint, and Plaintiff does not plead facts unequivocally demonstrating that they do not apply. Consider the potential applicability of the discovery rule as it relates to Plaintiff's Section 1983 and state law claims. Under New Jersey law,[4] the discovery rule tolls the statute of limitations until a plaintiff knows or, in the exercise of reasonable diligence, should have known that he has been injured and that the injury is attributable to the fault of another. *Caravaggio v. D'Agostini*, 765 A.2d 182, 187 (N.J. 2001). Of particular relevance to this matter, the New Jersey discovery rule also tolls the statute of limitations as to a particular defendant when "a plaintiff knows she has been injured and knows the injury was the fault of another[] but does not know that an additional party was also responsible for her plight." *Id.* at 189; *see also Ben Elazar v. Macrietta Cleaners, Inc.*, 165 A.3d 758, 760 (N.J. 2017) ("The accrual date of a claim may also be tolled when plaintiffs, knowing that one third party is liable, do not know that their injury is also the responsibility of an additional party."). Nothing in the Amended Complaint, however, unequivocally demonstrates that Plaintiff knew or should have known that the Moving

---

[4] Federal law governs the accrual date of a cause of action under Section 1983, but courts generally apply state tolling principles, including state law discovery rules, in Section 1983 cases. *See Wallace v. Kato*, 549 U.S. 384, 394 (2007); *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018).

8

Defendants were also responsible for his injuries more than two years before he filed the Amended Complaint.

For example, the Moving Defendants fail to identify, and the Court cannot discern, any allegations in the Amended Complaint that indisputably demonstrate when Plaintiff knew or should have known that, in addition to the Nurse Defendants' alleged negligence and indifference, some deficiency in the "development, promulgation, and implementation" of prison policies contributed to his injuries and that the Moving Defendants were responsible for those policies. (*See* Am. Compl. § 67.) Rather, the Moving Defendants argue that "Plaintiff's opposition is largely based on speculation and conclusory statements that are not contained within the Amended Compliant," (UCHC Defs.' Reply 2), and that "Plaintiff does not even plead that he made reasonable efforts, or any efforts at all" to ascertain the identity of those responsible for his injuries. (NJDOC Defs.' Reply 5.) As noted above, however, Plaintiff is not required to plead facts in his complaint sufficient to overcome an affirmative defense. *See Schmidt*, 770 F.3d at 251.

For these reasons, Plaintiff "has not pleaded himself out of court." *Schmidt*, 770 F.3d at 252. Accordingly, the Court will deny the Moving Defendants' motions without prejudice as to their statute of limitations arguments. Nothing in this Opinion prevents the Moving Defendants from raising such arguments at the summary judgment stage, where Plaintiff will have the burden of showing the applicability of the discovery rule and relation-back doctrine.

**B.     Whether Plaintiff Fails to State a Claim for Relief**

The Moving Defendants next contend that the Amended Complaint fails to state a claim against them. (*See* NJDOC Defs.' Br. in Supp. 12–15; UCHC Administrative Defs.' Br. in Supp.

9

5–9, 11–13.) The Court considers whether each count states a claim below.[5]

### 1. Supervisor Liability Claim (Count Three)

Count Three alleges supervisor liability claims pursuant to Section 1983 against the Moving Defendants for their "development, promulgation, and implementation of policies, customs, or practices," which Plaintiff contends "caused violations of Plaintiff's Constitutional rights under the Eighth and Fourteenth Amendments . . . ." (Am. Compl. ¶¶ 66–71.) Count Three also claims that the Moving Defendants failed to train and supervise their subordinates. (*See id.*) The Moving Defendants argue that Count Three fails to state a claim against them because the Amended Complaint does not sufficiently plead their personal involvement, knowledge, or acquiescence, and it does not identify a specific policy or practice that they failed to employ. (*See* NJDOC Defs.' Br. in Supp. 12–15.)

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Nonetheless, supervisors may be held liable for the unlawful conduct of subordinates in limited circumstances. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316–19 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). A plaintiff may establish supervisory liability under Section 1983 by showing: (1) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct; or (2) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation. *See id.*; *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015).

---

[5] The Court does not address Counts One and Two in the Amended Complaint, which the Court construes as asserting claims against the Nurse Defendants only.

With respect to the first type of claim, "[a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. To sufficiently allege knowledge and acquiescence, a plaintiff must provide facts suggesting that the defendant supervisor "had contemporaneous, personal knowledge of [the alleged violation(s)] and acquiesced in it." *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

To establish supervisor liability based on a policy or practice, a plaintiff must identify a specific policy or practice that the supervisor failed to employ and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisor practice or procedure. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). "[P]erhaps the easiest way [ ] a plaintiff can make out a supervisor liability claim is by showing that 'the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries.'" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

"'Failure to' claims – failure to train, failure to discipline, or . . . failure to supervise – are generally considered a subcategory of policy or practice liability." *Barkes*, 766 F.3d at 316. Courts assess such claims under the same standard as policy-based claims. *Christopher v. Nestlerode*, 240 F. App'x 481, 489 n.6 (3d Cir. 2007). Thus, to establish liability for failure to train, discipline, or supervise, a plaintiff must show that policymakers were on actual or constructive notice that flaws in their training, disciplining, or supervision caused subordinate officials to violate citizens' constitutional rights, which generally requires knowledge of a prior pattern of similar incidents and circumstances. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998)).

Here, the Amended Complaint fails to allege or plead sufficient facts to state a claim premised on the participation, direction, or knowledge and acquiescence of the Moving Defendants. *See Barkes*, 766 F.3d at 316. For example, although the Amended Complaint alleges that the Moving Defendants "failed to properly diagnose and treat; failed to render medical aid," (Am. Compl. ¶ 41), without additional supporting facts,[6] those allegations are conclusory, and the Court need not accept them as true. *See Iqbal*, 556 U.S. at 678. Likewise, the Amended Complaint is devoid of allegations that the Moving Defendants directed their subordinates to violate Plaintiff's constitutional rights. (*See* Am. Compl.) The Amended Complaint further fails to allege or plead sufficient facts to state a claim based on the Moving Defendants' knowledge and acquiescence. For example, the Amended Complaint fails to allege with particularity that the Moving Defendants personally knew of the Nurse Defendants' alleged conduct. *See Rode*, 845 F.2d at 1207. Although the Amended Complaint alleges that Plaintiff filed inquiries and grievances to the Grievance Coordinator and wrote a letter to "Administrator Bruce David" and Marcus Hicks, (*see id.* ¶¶ 32–34), nothing in the Amended Complaint permits the Court to reasonably infer that the Moving Defendants were personally aware of these inquiries, grievances, or letters. *See Evancho*, 423 F.3d at 353.

The Amended Complaint also fails to plead sufficient facts to state a claim on policy or practice theories. For example, the Amended Complaint fails to identify a specific policy or practice that the Moving Defendants failed to employ. *See Sample*, 885 F.2d at 1118. Further, the Amended Complaint fails to allege or plead sufficient facts for the Court to reasonably infer that

---

[6] For example, the Amended Complaint does not allege or plead facts to show that the Moving Defendants were in a position to diagnose or treat Plaintiff's injuries or that their job functions included the diagnosis and treatment of patients.

the Moving Defendants had actual or constructive notice that any deficiencies in their training, disciplining, or supervision violated Plaintiff's rights. *Connick*, 563 U.S. at 61.

Accordingly, Count Three fails to state a claim for relief. The Court, therefore, will grant the Moving Defendants' motions as to Count Three and dismiss it without prejudice.[7]

### 2.  State Constitutional Claim (Count Four)

Count Four asserts a state constitutional claim pursuant to the NJCRA. (*See* Am. Compl. ¶ 73.) The Moving Defendants argue that the same bar that applies to vicarious liability claims under Section 1983 also applies to NJCRA claims, and, because the Amended Complaint fails to plead participation, knowledge, or acquiescence of the Moving Defendants and fails to identify a specific policy or practice, it fails to state a claim under the NJCRA against them. (*See* NJDOC Defs. Br. in Supp. 12–13.)

The NJCRA "was modeled after [] § 1983[] and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[]." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). When interpreting the NJCRA, "[c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009). For this reason, courts have concluded that vicarious liability is not permitted for state constitutional claims brought pursuant to the NJCRA. *See Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012) ("[B]ecause *respondeat superior* liability is not permitted under § 1983, and because New Jersey courts interpret the NJCRA as analogous to § 1983, the Court holds that *respondeat superior* liability is not permitted for claims under the New Jersey Constitution and the NJCRA."); *see also*

---

[7]  As the Court does not construe Count Three as asserting claims against the Nurse Defendants, the Court will dismiss Count Three in its entirety.

*Wronko v. Howell Twp.*, No. 17-1956, 2018 WL 516055, at *7 (D.N.J. Jan. 23, 2018) ("The NJCRA does not impose vicarious or *respondeat superior* liability.").

As discussed above, Plaintiff fails to allege or plead facts sufficient to establish the Moving Defendants' supervisor liability through their participation, direction, or knowledge and acquiescence or through their design, promulgation, or implementation of a policy or practice. As no other form of vicarious or *respondeat superior* liability is permitted under the NJCRA, *see Ingram*, 911 F. Supp. 2d at 298, and as the Amended Complaint otherwise fails to plead facts sufficient to establish a state constitutional violation against the Moving Defendants for their personal involvement, Count Four fails to state a claim for relief against them. Accordingly, the Court will grant the Moving Defendants' motions as to Count Four and dismiss it without prejudice to the extent it asserts claims against them.[8]

### 3.     IIED Claim (Count Five)

Count Five asserts a state law tort claim for IIED. (*See* Am. Compl. ¶¶ 77–81.) Although the Moving Defendants' precise rationale as to why Count Five fails to state a claim is unclear, the Moving Defendants do contend generally that the Amended Complaint does not plead facts "that would remotely substantiate any of the alleged claims," (*see* NJDOC Defs.' Br. in Supp. 14), and it is clear to the Court that Count Five does not plead sufficient facts to set forth a claim.

Under New Jersey law, to make out a prima facie case of IIED, a plaintiff must show that: (1) the defendant acted intentionally; (2) the defendant's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; (3) that the conduct proximately caused the plaintiff emotional distress; and (4) the emotional distress was so severe that no reasonable

---

[8] As Count Four is not necessarily predicated on supervisor liability, the Court will permit Count Four to proceed against the Nurse Defendants for their alleged personal involvement.

person could be expected to endure it. *Segal v. Lynch*, 993 A.2d 1229, 1239 (N.J. Super. Ct. App. Div. 2010). The "severe emotional distress" contemplated by the fourth element "must be sufficiently substantial to result in either physical illness or serious psychological sequelae." *Turner v. Wong*, 832 A.2d 340, 348 (N.J. Super. Ct. App. Div. 2003). "Mere allegations of . . . 'embarrassment . . .' are insufficient as a matter of law . . . ." *Id.*

Here, the Amended Complaint fails to plead sufficient facts to plausibly demonstrate sufficiently outrageous conduct attributable to the Moving Defendants. For example, the Amended Complaint merely alleges that the Moving Defendants' "failed to properly to properly [sic] hire, train and supervise; failed in their operational decision making; failed to properly diagnose and treat; failed to render medical aid; abused their authority; failed to intervene; and failed to protect, among other acts of negligence and misconduct." (*See* Am. Compl. ¶¶ 40–44.) Nothing in the Amended Complaint, however, permits the Court to infer reasonably that the Moving Defendants' conduct could be considered "atrocious, and utterly intolerable in a civilized community." *See Segal*, 993 A.2d at 1239.

Moreover, the Amended Complaint fails to plead sufficient facts to plausibly demonstrate that Plaintiff suffered severe emotional distress. For example, nothing that the Amended Complaint alleges or pleads would permit the Court to infer reasonably that Plaintiff suffered emotional distress amounting to physical illness or serious psychological sequelae. *See Turner*, 832 A.2d at 348. Although the Amended Complaint alleges that Plaintiff felt humiliation because of the Defendants' alleged failure to provide adequate treatment for his incontinence, such allegations are insufficient as a matter of law to show severe emotional distress. *See id.*

Accordingly, Count Five fails to state a claim for relief against any defendant. The Court, therefore, will grant the Moving Defendants' motions as to Count Five and, pursuant to its

screening authority under the PLRA, the Court will dismiss it without prejudice against all defendants.

### 4. Civil Conspiracy (Count Six)

Count Six of the Amended Complaint raises a civil conspiracy claim. (Am. Compl. ¶¶ 82–87.) Once again, although the Moving Defendants do not provide arguments specific to Count Six, it is clear to the Court that it fails to state a claim for relief against them.

To state a claim for civil conspiracy under New Jersey law, a plaintiff must show: (1) a combination of two or more persons; (2) real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages. *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) (citing *Naylor v. Harkins*, 99 A.2d 849, 855 (N.J. Super. Ct. Ch. Div. 1953), *rev'd in part on other grounds*, 109 A.2d 19 (N.J. Super. Ct. App. Div. 1954)). To survive a Rule 12(b)(6) motion to dismiss, allegations of a conspiracy must provide "some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009).

Here, the Amended Complaint pleads insufficient facts from which the Court could infer reasonably the existence of an agreement or concerted action involving the Moving Defendants. *See id.* Accordingly, the Court will grant the Moving Defendants' motion as to Count Six and will dismiss it without prejudice to the extent it asserts claims against them.[9]

### 5. Abuse of Process (Count Seven)

In Count Seven, Plaintiff alleges that "[t]he actions of Defendants as described above constitute an abuse of process" and "[b]y reason of the foregoing[,] . . . Plaintiff suffered emotional

---

[9] The Court will permit Count Six to proceed against the Nurse Defendants.

distress, anguish and other damages." (Am. Compl. ¶¶ 88–90.)  The Moving Defendants contend that Count Seven fails to state a claim because the Amended Complaint does not contain factual allegations regarding a process with which they were involved or illegitimate use of this process. (*See* UCHC Administrative Defs.' Br. in Supp. 11–12.)

To state a claim for abuse of process, plaintiff must show "an ulterior motive and some further act after the issuance of process representing the perversion of the legitimate use of the process." *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1036–37 (3d Cir. 1988) (quoting *Fielder Agency v. Eldan Constr. Corp.*, 377 A.2d 1220 (N.J. Super. Ct. Law Div. 1977)). "Bad motives or malicious intent leading to the institution of a civil action are insufficient to support a cause of action for malicious abuse of process." *Galbraith v. Lenape Reg'l High Sch. Dist.*, 964 F. Supp. 889, 897–98 (D.N.J. 1997) (quoting *Fielder Agency*, 377 A.2d at 1222)).

Here, the Amended Complaint fails to allege and is completely devoid of any facts from which the Court could infer that the defendants took some further act after issuance of process that was illegitimate. (*See* Am. Compl.)  Rather, the Amended Complaint merely alleges that "[t]he actions of Defendants as described above constitute an abuse of process." (*Id.* ¶ 89.)  Such allegations are insufficient to state a claim, and the Court will grant the Moving Defendants' motions as to Count Seven.  Pursuant to its screening authority under the PLRA, the Court will dismiss Count Seven without prejudice against all defendants.

### 6. Failure to Provide Medical Care Under the NHRRRA (Count Eight)

Count Eight asserts a cause of action under New Jersey's NHRRRA. (Am. Compl. ¶¶ 91–94.)  The Moving Defendants argue that Count Eight fails to state a claim because the NHRRRA "governs medical care in nursing homes, not prisons." (UCHC Administrative Defs.' Br. in Supp. 13.)  Plaintiff counters that the Moving Defendants "cite no support for their position" and "a fair

17

reading of the statute could engender a cause of action for a prison" because a prison "is 100% responsible for the 24/7 care of elderly inmates." (Pl.'s Reply to UCHC Defs.' Mot. 21.)

The NHRRRA establishes a private cause of action for any resident[10] of a nursing home whose enumerated rights[11] are violated against any person committing such violation. *See* N.J. Stat. § 30:13-8. Critically, the NHRRRA defines "nursing home" as:

> any institution, whether operated for profit or not, which maintains and operates facilities for extended medical and nursing treatment or care for two or more nonrelated individuals with acute or chronic illness or injury, or a physical disability, or who are convalescing, or who are in need of assistance in bathing, dressing, or some other type of supervision, and are in need of such treatment or care on a continuing basis.

N.J. Stat. § 30:13-2 (c).

The Moving Defendants offer no substantive argument or support as to why the Act's broad definition of "nursing home" could not encompass a prison clinic or infirmary. Accordingly, the Court finds that the Moving Defendants have failed to carry their burden of demonstrating that no claim has been presented. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) ("The

---

[10] Resident means "any individual receiving extended medical or nursing treatment or care at a nursing home." N.J. Stat. § 30:13-2 (e).

[11] Pursuant to the NHRRRA, the rights of nursing home residents include, in pertinent part:

> [t]he right to . . . considerate and respectful care that recognizes the dignity and individuality of the resident, including the right to expect and receive appropriate assessment, management and treatment of pain as an integral component of that person's care consistent with sound nursing and medical practices
>
> [and]
>
> [the right] [n]ot be deprived of any constitutional, civil or legal right solely by reason of admission to a nursing home.

N.J. Stat. § 30:13-5 (j), (m).

defendant bears the burden of showing that no claim has been presented."). The Court, therefore, will deny the Moving Defendants' motion as to Count Eight without prejudice.

### 7. Punitive Damages (Count Nine)

Finally, Count Nine asserts a claim for punitive damages. (Am. Comp. ¶¶ 95–97.) The Moving Defendants contend that Count Nine fails to state a claim because punitive damages "is a remedy, not a cause of action." (UCHC Administrative Defs.' Br. in Supp. 13–14.)

It is well-settled that punitive damages are not a distinct cause of action. *See Incorvati v. Best Buy Co.*, No. 10-1939, 2010 WL 4807062, at *12 (D.N.J. Nov. 16, 2010). Thus, Count Nine fails to state a claim for relief. *See id.* Accordingly, the Court will grant the Moving Defendants' motions, and, pursuant to its screening authority under the PLRA, the Court will dismiss Count Nine with prejudice against all defendants. *See id.*

## IV. CONCLUSION

For the reasons above, the Court will deny the Moving Defendants' motions to dismiss in part as premature and without prejudice to the extent that they assert that the statute of limitations bars Plaintiff's claims. However, the Court will grant the motions in part to the extent that they assert that the Amended Complaint fails to state a claim, except as to Count Eight. The Court will also dismiss Counts Five, Seven, and Nine against all defendants, including the Nurse Defendants, pursuant to its screening authority under the PLRA. Finally, the Court will deny the Moving Defendants' pending letter requests for a stay of discovery pending a decision on the motions to dismiss as moot. An appropriate order follows.

Date: December 22, 2022

                                              s/ Zahid N. Quraishi
                                              **ZAHID N. QURAISHI**
                                              **UNITED STATES DISTRICT JUDGE**