<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**AURELIO CAGNO**,

        Plaintiff,

v.

**DONIQUE IVERY, et al.**,

        Defendants.

Civil Action No. 19-20384 (ZNQ) (TJB)

**OPINION**

**<u>QURAISHI, District Judge</u>**

    Plaintiff Aurelio Cagno, an inmate at New Jersey State Prison ("NJSP") in Trenton, New Jersey, is proceeding with a civil rights complaint pursuant to 42 U.S.C. § 1983 and state law. (First Am. Compl., ECF No. 59 [hereinafter FAC].) Before the Court are Plaintiff's motion for leave to file his proposed Second Amended Complaint ("SAC"), (Pl.'s Mot., ECF No. 102), and Defendants Arthur Brewer, M.D., Frank Ghinassi, Ph.D., and Ihuoma Nwachukwu, M.D.'s (the "University Correctional Health Care Administrative Defendants" or "UCHC Administrative Defendants") and Gary Lanigan, Steven Johnson, and Hesham Soliman's (the "New Jersey Department of Corrections Defendants" or "NJDOC Defendants") briefs in opposition, (NJDOC Defs.' Br., ECF No. 113., UCHC Administrative Defs.' Br., ECF No. 106.) Also before the Court is Defendant Nwachukwu's motion to dismiss the FAC. (*See* UCHC Administrative Defs.' Br.) For the reasons below, the Court will grant Plaintiff's Motion and declare the SAC to be the operative pleading in this matter. However, pursuant to its screening authority, the Court will dismiss without prejudice the SAC's civil conspiracy claims against all defendants, including

Defendants Donique Ivery, A.N.P., R.N., and Keisha Scott, R.N. (the "Nurse Defendants"). Finally, the Court will deny Defendant Nwachukwu's Motion to Dismiss the FAC as moot.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

    This case arises from a foot condition that Plaintiff endured while incarcerated at NJSP. On or around November 13, 2017, Plaintiff submitted a sick call slip for pain in his right foot. (FAC ¶ 13.) Defendant Ivery saw Plaintiff at NJSP's clinic on or around November 15, 2017. (*Id.* ¶ 14.) Plaintiff explained to Defendant Ivery that he was experiencing severe pain on his right foot, that his right foot was cold, and that he was losing feeling in his toes. (*Id.* ¶ 15.) Defendant Ivery directed Plaintiff to take off his right sock and shoe. (*Id.* ¶ 16.) She "glimpsed" at Plaintiff's foot from approximately eight feet and ordered him to put back on his sock and shoe. (*Id.*) Unsatisfied with this, Plaintiff asked her to reexamine his foot, but Defendant Ivery refused. (*Id.*) Instead, she became mad at Plaintiff and sent him away without any treatment. (*Id.* ¶¶ 16–17.)

    On or around November 16, 2017, Plaintiff noticed that the bottom of his toes was changing color and his pain was increasing. (*Id.* ¶ 19.) A correctional office gave Plaintiff a medical pass and sent him to the clinic. (*Id.*) Upon his arrival at the clinic, Plaintiff told Defendant Ivery that his pain had increased and that the bottom of his toes was turning gray. (*Id.* ¶ 20.) Defendant Ivery, however, refused to attend to Plaintiff, telling him: "I already saw you yesterday. I'm not going to see you again. Go see someone else." (*Id.*)

    Thereafter, Plaintiff went to see Defendant Scott. (*Id.* ¶ 21.) Plaintiff explained to Defendant Scott what he had experienced with his foot, but Defendant Scott told him that Defendant Ivery had already examined him. (*Id.* ¶ 22.) Defendant Scott sent Plaintiff away without any treatment. (*Id.*)

The next day, Plaintiff informed correctional officers that his condition was worsening. (*Id.* ¶ 23.) One of the officers gave him an emergency medical pass and sent him to the clinic. (*Id.*) Once there, Plaintiff informed the Nurse Defendants about his condition, but both refused to treat him. (*Id.*) Once again, Plaintiff left without any treatment. (*Id.*)

A day or two later, an officer gave Plaintiff another emergency pass and sent him to the clinic. (*Id.* ¶ 24.) This time Nurse Inaish Jackson saw Plaintiff. (*Id.*) Plaintiff explained his situation to Nurse Jackson. (*Id.*) Nurse Jackson examined Plaintiff's right foot and informed him that he needed to go to the hospital right away. (*Id.*) Nurse Jackson told the Nurse Defendants about Plaintiff's condition and summoned an ambulance to take Plaintiff to Saint Francis Medical Center. (*Id.* ¶ 25.) According to Plaintiff, the Nurse Defendants appeared scared. (*Id.*) Defendant Ivery started using her computer and called Defendant Scott to join her, and they began to tamper with Plaintiff's medical record. (*Id.*)

At the hospital, medical providers diagnosed Plaintiff with ischemia of the foot due to a thrombosed popliteal aneurysm. (*Id.* ¶ 27.) The medical providers told Plaintiff that he might lose his toes because of the delay in his arrival at the hospital. (*Id.*) The medical providers operated on Plaintiff, and Plaintiff stayed at the hospital from November 20 to December 3, 2017. (*Id.*) Although Plaintiff returned to the prison infirmary on December 3, 2017, officials sent him back to the hospital on December 4, 2017. (*Id.* ¶ 28.) On December 20, 2017, medical providers at the hospital amputated half of Plaintiff's right foot. (*Id.*)

Plaintiff returned to the prison infirmary on December 29, 2017, and spent a few months there. (*Id.* ¶¶ 28–29.) During this time, Plaintiff was unable to control his bodily functions. (*Id.* ¶ 29.) Instead, Plaintiff used pampers and had a foley catheter inserted. (*Id.*) The foley catheter came with instructions from the specialist to be changed every three to four weeks, but neither the

3

Nurse Defendants nor their colleagues ever changed it. (*Id.*) As a result, Plaintiff developed a urinary infection and pain. (*Id.*)

Plaintiff also developed a severe rash and wound due to the alleged inadequate treatment provided by the Nurse Defendants. (*Id.* ¶ 30.) This caused Plaintiff to experience pain, a burning sensation, and humiliation. (*Id.*) According to Plaintiff, the Nurse Defendants were aware that Plaintiff had a severe rash and wound, but they intentionally failed to provide adequate incontinence treatment. (*Id.*)

On January 4, 2017, Defendant Scott refused to clean Plaintiff and change his diaper. (*Id.* ¶ 31.) This caused him severe pain and humiliation. (*Id.*)

On November 15, 2019, two years after Defendant Ivery first saw Plaintiff for his foot injury, Plaintiff initiated this action by filing a complaint with the Court *pro se*. (*See* Compl, ECF No. 1.) The original complaint asserted claims against the Nurse Defendants only, including claims for malpractice and inadequate medical care. (*See id.*) The Court screened the complaint and permitted the claims to proceed. (*See* June 8, 2020 Order, ECF No. 3.)

On May 24, 2022, Plaintiff, this time represented by counsel, filed the FAC. The FAC, for the first time, raised claims against the NJDOC Defendants and the UCHC Administrative Defendants, who Plaintiff alleges were, as leadership of the NJDOC and UCHC, responsible for the training, supervision, and implementation of policies and procedures that contributed to Plaintiff's injuries. (*See id.* ¶¶ 40–44.) Specifically, the FAC set forth the following seven claims against the NJDOC and UCHC Defendants: supervisor liability pursuant to Section 1983, state constitutional violations pursuant to the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. §§ 10:6-1 to -2, intentional infliction of emotional distress ("IIED"), civil conspiracy, abuse of

process, violations of New Jersey's Nursing Home Responsibility and Rights of Residents Act ("NHRRRA"), N.J. Stat. §§ 30:13-1 to 30:13-19, and punitive damages. (*See* FAC ¶¶ 47–97.)

On September 7, 2022, the NJDOC Defendants and Defendants Brewer and Ghinassi submitted motions to dismiss the FAC, asserting that the relevant statute of limitations bars Plaintiff's claims and that the FAC fails to state a claim for relief. (*See* NJDOC Defs.' Mot., ECF No. 75; Defs. Brewer and Ghinassi's Mot., ECF No. 76.)[1] On December 23, 2022, the Court granted the motions in part and denied them in part. (Dec. 23, 2022 Op., ECF No. 93.) The Court dismissed Plaintiff's supervisory liability and NJCRA claims as to the NJDOC Defendants and Defendants Brewer and Ghinassi and dismissed the IIED, civil conspiracy, abuse of process, and punitive damages claims against all defendants, including the non-moving defendants, for failure to state a claim for relief. (*See id.*)

On February 15, 2023, Plaintiff filed the instant motion for leave to file the SAC. (Pl.'s Mot., ECF No. 102.) In the SAC, Plaintiff reasserts his supervisory liability, NJCRA, and civil conspiracy claims but omits the IIED, abuse of process, and punitive damages claims that he asserted in the FAC. (*See* SAC, ECF No. 102-6.)

On March 6, 2023, the UCHC Administrative Defendants filed their brief in opposition to Plaintiff's motion along with Defendant Nwachukwu's motion to dismiss the FAC. (*See* UCHC Defs.' Br.) On March 31, 2023, the NJDOC Defendants submitted their brief in opposition to Plaintiff's motion. (*See* NJDOC Defs.' Br.) Plaintiff submitted a reply brief and opposition to Defendant Nwachukwu's motion to dismiss on April 24, 2023. (*See* Pl.'s Reply Br., ECF No. 120.) Accordingly, the matter is ripe for determination.

---

[1] Defendant Nwachukwu did not move to dismiss the FAC at that time. (*See* Defs. Brewer and Ghinassi's Mot.)

## II. LEGAL STANDARDS

### A. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that a district court should freely give leave to amend when justice so quires. Fed. R. Civ. P. 15(a)(2). Nonetheless, a district court may deny a motion for leave to amend where there is undue delay, bad faith, dilatory motive, prejudice, or futility. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Id.* In assessing "futility," a district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id.*

### B. Motion to Dismiss

In deciding a motion to dismiss, a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 560 U.S. at 570). "A claim has facial plausibility when the

6

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. Plaintiff's Motion for Leave to Amend

Plaintiff seeks leave to file his proposed SAC to add additional factual allegations relating to his supervisor liability, NJCRA, civil conspiracy claims. As discussed below, the Court finds that permitting Plaintiff leave to amend would not be entirely futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434.[2] Accordingly, the Court will grant Plaintiff's motion and declare the SAC to be the operative pleading in this matter. However, that does not end the matter as the Court retains screening authority pursuant to 28 U.S.C. § 1915(e)(2). Exercising this authority, the Court will permit the supervisor liability and NJCRA claims in the SAC to proceed against the NJDOC and UCHC Administrative Defendants, but it will once again dismiss without

---

[2] Defendants do not argue, and the Court does not find, undue delay, bad faith, dilatory motive, or prejudice.

prejudice Plaintiff's civil conspiracy claims against all defendants for failure to state a claim.

### 1. Supervisor Liability Claims

The Court first examines the SAC's supervisor liability claims. In the December 23, 2022 Opinion, the Court explained that a plaintiff may establish the liability of supervisory defendants under Section 1983 by showing: (1) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct; or (2) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation. (*See* Dec. 23, 2022 Op. 10.) The Court dismissed Plaintiff's supervisor liability claims in the FAC because it failed to allege or plead sufficient facts to demonstrate either basis for liability. (*See id.* at 12–13.)

With respect to allegations of participation, direction, or knowledge and acquiescence, the Court noted that: "although the Amended Complaint alleges that the Moving Defendants 'failed to properly diagnose and treat; failed to render medical aid,' (Am. Compl. ¶ 41), without additional supporting facts, those allegations are conclusory, and the Court need not accept them as true." (Dec. 23, 2022 Op. 12.) Likewise, the Court indicated that the FAC was devoid of allegations that the NJDOC and UCHC Administrative Defendants directed their subordinates to violate Plaintiff's constitutional rights. (*See id.*) Finally, the Court determined that the Amended Complaint failed to allege with the requisite particularity that the Moving Defendants knew of and acquiesced to the violation of Plaintiff's rights by their subordinates. (*See id.*) For example, the Court noted that: "[a]lthough the Amended Complaint alleges that Plaintiff filed inquiries and grievances to the Grievance Coordinator and wrote a letter to 'Administrator Bruce David' and Marcus Hicks, nothing in the Amended Complaint permits the Court to reasonably infer that the Moving Defendants were personally aware of these inquiries, grievances, or letters." (*Id.*)

With respect to allegations of liability premised on a policy, practice, or custom theory, the Court noted that "the Amended Complaint fails to identify a specific policy or practice that the Moving Defendants failed to employ." (*Id.*) Further, the Court found, "the Amended Complaint fails to allege or plead sufficient facts for the Court to reasonably infer that the Moving Defendants had actual or constructive notice that any deficiencies in their training, disciplining, or supervision violated Plaintiff's rights." (*Id.* at 12–13.)

The SAC adds the following pertinent allegations to Plaintiff's supervisory liability claims against the NJDOC Defendants:

> Due to the many complaints and grievances filed by Plaintiff, all Defendants were or should have been aware of and therefore acquiesced to the conduct alleged herein.
>
> . . .
>
> The Jail and the NJDOC ha[ve] a significant history of issues similar to the one at issue here, including by way of lawsuits, inmate complaints and grievances, and governmental investigations into NJDOC Prisons. They were also aware of the Nurse Defendants' history of mistreatment of inmates.
>
> The problems with the failure to provide adequate medical care at the Jail was well known to the DOC Supervisory Defendants, and yet even with this knowledge, they failed to act and in fact encouraged such conduct.
>
> Such conduct, i.e., tolerance to the negligent and deliberate indifference to the medical needs of inmates, [became] a custom and/or policy under the DOC Supervisory Defendants.

(SAC ¶¶ 36, 43–46.) The SAC also adds nearly identical allegations against the UCHC Administrative Defendants. (*See id.* ¶¶ 49–51.)

The NJDOC and UCHC Administrative Defendants contend that permitting Plaintiff leave to amend would be futile because the new allegations in the SAC do not cure the deficiencies that the Court noted in its December 23, 2022 Opinion. (NJDOC Defs.' Br. 5–11; UCHC

9

Administrative Defs.' Br. 4–11.) First, Defendants argue that the proposed SAC fails to state a claim premised on participation, direction, or knowledge and acquiescence. (NJDOC Defs.' Br. 5–11; UCHC Administrative Defs.' Br. 4–11.) For instance, the NJDOC Defendants submit that the SAC "lacks any facts which could permit the Court to infer the [NJDOC] Defendants had any knowledge or involvement with Plaintiff's medical care" and that "Plaintiff does not even plead that the [NJDOC] Defendants ever received, read, or responded to the grievances he refers to, much less that they contemplated any constitutional harm." (NJDOC Defs.' Br. 6.)

Second, the NJDOC and UCHC Administrative Defendants argue that the SAC fails to adequately plead a claim based on a policy, practice, or custom. (NJDOC Defs.' Br. 7–8; UCHC Administrative Defs.' Br. 9.) For example, the UCHC Administrative Defendants submit that "[t]he only new allegation raised in the Proposed SAC that even mentions a policy, custom or practice" – Plaintiff's allegation that "[s]uch conduct, *i.e.*, tolerance to the negligent and deliberate indifference to the medical needs of inmates[] [became] a custom and/or policy under the UCHC [Administrative] Defendants" – is "nonsensical and lacks any factual support." (UCHC Administrative Defs.' Br. 9 (citing SAC ¶ 51).) By way of another example, the NJDOC Defendants argue that Plaintiff "does not identify any policy that created an unreasonable risk of a constitutional violation, much less that the [NJDOC] Defendants knew such policy created such a risk" and "does not plead indifference to that risk[] or that his constitutional injury was caused by the failure to implement such policy or procedure." (NJDOC Defs.' Br. 8.)

In his Reply, Plaintiff insists that the SAC adequately alleges claims premised on a policy, custom, and/or failure to train and supervisor theories. (Pl.'s Reply 19–25.) He claims that he "has in fact [alleged] the existence of certain policies, procedures, and customs that were violated [and] sufficiently explaine[s] how Defendants came to obtain knowledge of the unlawful actions

taken against Plaintiff over the course of his incarceration." (*Id.* at 21.) For instance, Plaintiff asserts that he "specifically alleges that Defendants had a policy and/or custom of 'tolerance to the negligent and deliberate indifference to the medical needs of inmates.'" (*Id.*)

The Court determines that the proposed SAC contains sufficient factual allegations to make Plaintiff's supervisor liability claims plausible. As the Court explained, "one way--perhaps the easiest way--a plaintiff can make out a supervisor liability claim is by showing that 'the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries.'" (*See* Dec. 23, 2022 Op. 11 (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001)). Here, the SAC alleges a "significant history of issues similar to the one at issue here, including by way of lawsuits, inmate complaints and grievances, and governmental investigations into NJDOC Prisons." (SAC ¶ 43.) The SAC also alleges that these issues were known to Defendants, (SAC ¶¶ 44, 50), and the Court could reasonably infer that the "leadership" of the NJDOC and UCHC had such knowledge on account of the allegations of prior lawsuits and governmental investigations regarding the issues. Finally, the SAC alleges that Defendants failed to act and, in fact, encouraged such conduct. (*See* SAC ¶¶ 44, 50.) Together, these allegations raise the right to relief above the speculative level, *see Twombly*, 550 U.S. at 555; *Beers-Capitol*, 256 F.3d at 134, and, therefore, permitting Plaintiff leave to amend is not futile, *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434.

Accordingly, the Court will grant Plaintiff's motion for leave to amend and declare the SAC to be the operative pleading in this matter. The Court will also permit Plaintiff's supervisor liability claims against the NJDOC and UCHC Administrative Defendants to proceed.

### 2.     NJCRA Claims

Next, the Court turns to the proposed SAC's NJCRA claims. In its December 23, 2022 Opinion, the Court dismissed Plaintiff's NJCRA claims against the NJDOC Defendants and Defendants Brewer and Ghinassi for the same reasons it dismissed the supervisor liability claims under Section 1983. (*See* Dec. 23, 2022 Op. 13–14.) Having determined that permitting Plaintiff leave to amend is not futile as to the supervisor liability claims, the same can be said as to the NJCRA claims. Accordingly, the Court will permit Plaintiff's NJCRA claims against the NJDOC and UCHC Administrative Defendants to proceed as well.

### 3.     Civil Conspiracy Claims

Finally, the Court considers the proposed SAC's civil conspiracy claims. As the Court previously explained, to state a claim for civil conspiracy under New Jersey law, a plaintiff must show: (1) a combination of two or more persons; (2) real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages. *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) (citing *Naylor v. Harkins*, 99 A.2d 849, 855 (N.J. Super. Ct. Ch. Div. 1953), *rev'd in part on other grounds*, 109 A.2d 19 (N.J. Super. Ct. App. Div. 1954)). To survive a Rule 12(b)(6) motion to dismiss, allegations of a conspiracy must provide "some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009).

The Court previously granted the motion to dismiss as to Plaintiff's civil conspiracy claims because, it found, the FAC pleaded insufficient facts from which the Court could infer reasonably the existence of an agreement or concerted action involving the Moving Defendants. (*See* Dec.

12


23, 2022 Op. 16.)  The SAC adds only one allegation relevant to this claim: "The conspiracy was effectuated through the Defendants' custom and/or policy of ignoring and/or validating negligent and deliberately indifferent treatment of inmates as described above."  (SAC ¶ 89.)

Defendants contend that the addition of this single allegation is insufficient to cure the deficiencies noted in the Court's December 23, 2022 Opinion because it does not adequately plead the existence of an agreement or concerted action.  (*See* NJDOC Defs.' Br. 10–11; UCHC Administrative Defs.' Br. 10–11.)  In reply, Plaintiff claims that issue the Court had with the FAC "was with the lack of pleadings regarding how the conspiracy was effectuated."  (Pl.'s Reply 27.)  Thus, he contends that the addition of the single allegation cured the defect.  (*See id.*)  Plaintiff also points to the existing allegation that both "Defendants Ivery and Scott . . . 'began to tamper with Plaintiff's Electronic Medical Record."  (*Id.*)  Looking at these alleged facts together, he claims, he has pleaded enough to state a civil conspiracy claim.  (*See id.* at 27–28.)

Here, the Court agrees with Defendants.  In particular, the SAC once again fails to allege or plead sufficient facts for the Court to reasonably infer an agreement amongst any of the defendants.  Although the Court might infer concerted action from the allegation regarding Defendants Ivery and Scott, there is simply no allegation in the SAC from which the Court could reasonably infer an agreement amongst the defendants.  Accordingly, the Court will exercise its screening authority pursuant to 28 U.S.C. ¶ 1915(e)(2) and dismiss Plaintiff's civil conspiracy claims in the SAC against all defendants without prejudice for failure to state a claim.  *See Capogrosso*, 588 F.3d at 184.

### B. Defendant Nwachukwu's Motion to Dismiss the FAC

Having granted Plaintiff's motion for leave to file the SAC, Defendant Nwachukwu's

motion to dismiss the FAC becomes moot.  Accordingly, the Court will deny it.

## IV.     CONCLUSION

For the reasons above, the Court will grant Plaintiff's motion for leave to file the proposed SAC and declare the SAC to be the operative pleading in this matter.  However, the Court will dismiss without prejudice Plaintiff's civil conspiracy claims in the SAC against all defendants for failure to state a claim for relief.  The Court will also deny Defendant Nwachukwu's motion to dismiss the FAC as moot.  An appropriate order follows.

Date: September 25, 2023

                                              s/ Zahid N. Quraishi  
                                              **ZAHID N. QURAISHI**  
                                              **UNITED STATES DISTRICT JUDGE**